IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
GALVESTON DIVISION

| | | |
|---|---|---|
| ALEJANDRO SOSA, JR.., | § | |
| TDCJ-CID No. 864611, | § | |
|     Plaintiff, | § | |
| v. | § | CIVIL ACTION G-07-0174 |
| CARL L. DAVIS, *et al.*, | § | |
|     Defendants. | § | |

OPINION ON PARTIAL DISMISSAL

Plaintiff, state inmate Alejandro Sosa, Jr., filed a *pro se* complaint and a more definite statement of his claims alleging violations of his civil rights under 42 U.S.C. § 1983. (Docket Entries No.1, No.17). Defendants Carl Davis and Benjamin A. Jefferies have filed a motion for summary judgment (Docket Entry No.31); plaintiff has not filed a response to their motion. For the reasons to follow, the Court will grant in part, and deny in part, defendants' motion for summary judgment.

I. BACKGROUND

Plaintiff alleges that defendants Sgt. Carl L. Davis ("Davis") and Lt. Benjamin A. Jefferies ("Jefferies") physically assaulted him without provocation by hitting and kicking him on the head and body while he was handcuffed behind his back. (Docket Entry No.1). Plaintiff claims he sustained injuries that required first aid attention. (*Id*.). He seeks nominal, punitive, and compensatory damages, and injunctive relief. (*Id*.).

Defendants move for summary judgment on grounds that they are entitled to Eleventh Amendment immunity and qualified immunity; they also contend that plaintiff has not sustained a physical injury that would entitle him to monetary damages. (Docket Entry No.31).

1

## II. STANDARD OF REVIEW

To be entitled to summary judgment, the pleadings and summary judgment evidence must show that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c). The moving party bears the burden of initially pointing out to the court the basis of the motion and identifying the portions of the record demonstrating the absence of a genuine issue for trial. *Duckett v. City of Cedar Park, Tex.*, 950 F.2d 272, 276 (5th Cir. 1992). Thereafter, "the burden shifts to the nonmoving party to show with 'significant probative evidence' that there exists a genuine issue of material fact." *Hamilton v. Seque Software, Inc.*, 232 F.3d 473, 477 (5th Cir. 2000) (quoting *Conkling v. Turner*, 18 F.3d 1285, 1295 (5th Cir. 1994)). The Court may grant summary judgment on any ground supported by the record, even if the ground is not raised by the movant. *U.S. v. Houston Pipeline Co.*, 37 F.3d 224, 227 (5th Cir. 1994).

## III. DISCUSSION

The Civil Rights Act of 1866 creates a private right of action for redressing the violation of federal law by those acting under color of state law. 42 U.S.C. § 1983; *Migra v. Warren City Sch. Dist. Bd. of Educ.*, 465 U.S. 75, 82 (1984). Section 1983 is not itself a source of substantive rights but merely provides a method for vindicating federal rights conferred elsewhere. *Albright v. Oliver*, 510 U.S. 266, 271 (1994). To prevail on a section 1983 claim, the plaintiff must prove that a person acting under the color of state law deprived him of a right secured by the Constitution or laws of the United States. *Blessing v. Freestone*, 520 U.S. 329, 340 (1997). A section 1983 complainant must support his claim with specific facts demonstrating a constitutional deprivation and may not simply rely on conclusory allegations.

*Schultea v. Wood*, 47 F.3d 1427, 1433 (5th Cir. 1995).  Thus for plaintiff to recover, he must show that the defendants deprived him a right guaranteed by the Constitution or the laws of the United States.  *See Daniels v. Williams*, 474 U.S. 327, 329-31 (1986).

### A. Eleventh Amendment Immunity

Defendants assert Eleventh Amendment Immunity for monetary damages against them in their official capacities.  (Docket Entry No.31).  Suits for damages against the state are barred by the Eleventh Amendment.  *Kentucky v. Graham,* 473 U.S. 159, 169 (1985).  Under the Eleventh Amendment, an unconsenting state is immune from suits brought in federal courts by her own citizens as well as by citizens of another state.  *Edelman v. Jordan,* 415 U.S. 651, 663 (1974).  Absent waiver, neither a state nor agencies acting under its control are subject to suit in federal court.  *Puerto Rico Aqueduct and Sewer Auth. v. Metcalf & Eddy, Inc.,* 506 U.S. 139, 144 (1993).  This bar remains in effect when state officials are sued for damages in their official capacity.  *Cory v. White,* 457 U.S. 85, 89 (1982).  To the extent plaintiff sues defendants for monetary damages in their official capacities, as employees of TDCJ-CID, plaintiff's claims are barred by the Eleventh Amendment.

Under Eleventh Amendment jurisprudence, a federal court may not grant equitable relief against a state official with regard to the legality of past conduct.  *See Green v. Mansour*, 474 U.S. 64, 73 (1985).  However, the Eleventh Amendment does not bar claims for prospective equitable relief based on alleged unconstitutional actions of state officials.  *Ex parte Young*, 209 U.S. 123 (1908); *Aguilar v. Texas Dept. of Criminal Justice*, 160 F.3d 1052, 1054 (5th Cir. 1998); *Brennan v. Stewart*, 834 F.2d 1248, 1253 (5th Cir. 1988) (discussing equitable relief under Eleventh Amendment).  "In determining whether the doctrine of *Ex parte Young*

3

avoids an Eleventh Amendment bar to suit, a court need only conduct a 'straightforward inquiry into whether [the] complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective.' " *Verizon Maryland, Inc. v. Public Serv. Comm'n*, 535 U.S. 635, 645 (2002) (quoting *Coeur d'Alene Tribe of Idaho*, 521 U.S. 261, 296 (1997)).

As noted below, plaintiff does not allege an ongoing violation of federal law by these defendants and he has not specified a request for prospective relief. Accordingly, plaintiff is not entitled to equitable relief from defendants in their official capacities.

Defendants' motion for summary judgment on Eleventh Amendment grounds is GRANTED.

### B. Qualified Immunity

Defendants assert the affirmative defense of qualified immunity. (Docket Entry No.31). "Qualified immunity is 'an entitlement not to stand trial or face the other burdens of litigation.'" *Saucier v. Katz*, 533 U.S. 194, 199-200 (2001) (quoting *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985)). Qualified immunity "provides ample protection to all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341 (1986). When a defendant invokes qualified immunity, the burden is on the plaintiff to demonstrate the inapplicability of the defense. *McClendon v. City of Columbia*, 305 F.3d 314, 322 (5th Cir. 2002). Even so, on summary judgment, the court must look to the evidence before it in the light most favorable to the plaintiff when conducting a qualified immunity inquiry. *Id.* at 323.

"To rebut the qualified immunity defense, the plaintiff must show: (1) that he has alleged a violation of a clearly established constitutional right, and (2) that the defendant's

conduct was objectively unreasonable in light of clearly established law at the time of the incident." *Waltman v. Payne*, 535 F.3d 342, 346 (5th Cir. 2008) (footnote omitted). The Court has discretion "in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Pearson v. Callahan*, – U.S. –, 129 S.Ct. 808, 818 (2009).

The unnecessary and wanton infliction of pain constitutes cruel and unusual punishment prohibited by the Eighth Amendment. *Hudson v. McMillian*, 503 U.S. 1, 5 (1992). . When an inmate has alleged that a prison official used excessive force, "the core judicial inquiry is ... whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Id.* at 7. "In determining whether the use of force [by a prison guard] was wanton and unnecessary," the court considers "the extent of [the] injury suffered," "the need for [the] application of force, the relationship between that need and the amount of force used, the threat reasonably perceived by the responsible officials, and any efforts made to temper the severity of a forceful response." *Id.* (internal quotation marks omitted). These factors are not exclusive, and each case must be judged on its own facts. *Baldwin v. Stalder*, 137 F.3d 836, 839 (5th Cir. 1998).

In his handwritten statement given in the Use of Force Report dated January 7, 2007, the day of the altercation, plaintiff states the following:

> I was in P-3 hallway when Sgt. Davis told me to strip. I had already done this more than once in less that 30 min[utes]. So I told him that I was not going to strip because now he was harassing me. So he handcuffed me and took me to the Seg-office. At that time, Sgt. Davis told Lt. Jefferies that I refused to strip. So Lt. Jefferies told me to tell him the problem at the time I was. [sic] Lt. Jefferies grab [sic] by my shirt from the chair I was sitting on. At that point he, Lt. Jefferies[,] hit me and started kicking and hiting [sic] me. He also grabed [sic] my ears and picked my head up

5

> and slabed [sic] me to the floor. At the same time he was doing that he was telling me to fight back. "You had enogh [sic] fight back" was his words. At the time Sgt. Davis was saying that he told us he was going to get even. "I told ya here I would get even someday when they first hiting [sic] me and kicking me. They Lt. Jefferies and Sgt. Davis pick me up and ask me was I going to strip. I told them yes sir. So they took the handcuffs off of me and I took off my socks, shirt, and boxers because Lt. Jefferies had already took off my boots and pants and started hitting me with them. After I striped [sic] Lt. Jefferies told me to put my boxers back on and they then put the handcuffs back on. At the time this was happen[ing] 3rd shift seg officers tried [sic] to come in but they send [sic] them out and told them that they could come back after this. Lt. Jefferies told Davis to get a video camera. Sgt. Mora excorted [sic] me to the infirmary with the camera and brought me to D-103.

(Docket Entry No.31-2, pages 16-17).

In an unsigned and typed letter to the OIG Investigations Division, dated February 20, 2007, plaintiff states the following:

> On 1-7-07 I was physically assaulted on the Darrington Unit by Lt. Jeffries and Sgt. Davis in the Ad. Seg. Office. At approximately 5:30 p.m., while in the main hall at the opposite end of the building near I-Line, Sgt. Davis attempted to strip search me for what was going to be about the fifth time of the day, and this made me feel like I was being harassed and so I refused to be stripped searched and requested to speak with a Lt. Sgt. Davis then handcuffed me and escorted me to the Ad. Seg. Office without a video camera. Upon entering the Ad. Seg. Office Lt. Jeffries wanted to know why I didn't want to strip and why I was causing problems. When I attempted to give my reply, Lt. Jeffries and Sgt. Davis began hitting me. Sgt. Mora was also in the office and observed the whole incident. Officer Redd and other inmates witnessed that I went into the Ad. Seg. Office handcuffed and then came back out all beat up. Pictures of my injuries were taken. The injuries do not match what the Lt. and Sgt. wrote in their report as to why "use of force" was used. I was handcuffed and was attacked. And, during the attack, Lt. Jeffries told me to fight back, saying, "Do you think you're a bad motherf—ker now?" And Sgt. Davis said: "I told ya'll I would get the last laugh." Sgt. Davis had been in an incident a few weeks prior and seemed to be retaliating against Hispanic inmates. That's why I felt like he was harassing me by strip searching me repeatedly.

> I filed a grievance on this issue but have not heard anything. I am wanting to file charges on the Officers for assaulting me.

(Docket Entry No.1, page 6). Plaintiff's grievances are not in the record but plaintiff states that his grievances were summarily denied and he was informed that the Office of Inspector General did not open a case. (Docket Entry No.17, page 4).

In his more definite statement, filed almost eighteen months after the incident, plaintiff alleges the following, in pertinent part:

> The plaintiff was sitting in a chair, while Officer Benjamin A. Jefferies was shouting and spitting in the plaintiff's face: "So you refuse to strip!" with Off[icer] Carl L. Davis standing next to the plaintiff, on the left side with his hand on the plaintiff's left shoulder.
>
> Then Officer Benjamin A. Jefferies pulled the plaintiff out of the chair with both hands by plaintiff's shirt. He then struck the plaintiff with a closed fist on the plaintiff's left jaw. The plaintiff unable to defend himself then fell to the floor screaming, crying and asking for help. Then defendant Benjamin A. Jefferies began kicking the plaintiff on the legs furiously. Then [he] began kicking the plaintiff on the plaintiff's side to the rib area. The plaintiff could no longer breathe and began crying. Then defendant Carl L. Davis kneeled down and began beating the plaintiff with a closed fist to the side of the plaintiff's face. The plaintiff in fear and pain attempted to cover his face by folding his face to his body while Off[icer] Carl L. Davis persisted in the assault by pounding and beating the plaintiff on the back of the head, till plaintiff lost consciousness. Then the plaintiff was brought back to consciousness by more furious blows to the head by both defendants, Carl L. Davis and Benjamin A. Jefferies, which caused severe physical damage. Then the defendants began to remove plaintiff's pants and boots. Then [they] pulled the plaintiff off the ground and held plaintiff against the wall. The defendants then removed the restraint (metal cuffs), then removed plaintiff's shirt. Then Off[icer] Benjamin A. Jefferies ordered Off[icer] Sargent [sic] Mora that witnessed the assault [sic] to go get the camera. Sargent [sic] Mora then escorted the plaintiff to the infirmary to get a physical for pre hearing detention.

(Docket Entry No.17, pages 1-2). Plaintiff indicates in the same document that he has not been in any other incidents with Jefferies or Davis. (*Id.*, page 3). Plaintiff states that he suffered

severe physical injuries, *i.e.,* his right eye was cut open which resulted in adhesive stitches, massive bruises to the back area and mid-section ribs and busted lips, as a result of the altercation. (*Id*., page 2). Plaintiff claims he also suffered mental anguish, which caused him to suffer insomnia, paranoia, and fear of life. (*Id.*, page 3).

Defendants' account of the incident differs considerably from plaintiff's account. In his written statement entered January 7, 2007, defendant Carl Davis states the following, in pertinent part:

> On 1-7-07 and at approximately 6:15pm [sic] I, Sergeant Carl Davis, observed offender Sosa . . . attempting to enter L line. Offender Sosa appeared to have a foreign object in his pants. I ordered him to submit to a strip search. The offender refused. He stated that he had a bag of chips in his pants and that I was harassing him. I ordered him again to strip search. He continued to refuse. At this time I placed the offender in handrestraints [sic] and escorted him to the Ad Seg Office to speak to Lieutenant Benjamin Jefferies. Once in the Office the offender sat down in a chair and began saying that I was harrassing [sic] him for no reason. Lt. Jefferies ordered the offender to stand up[;] he did. Lt. Jefferies ordered the restraints to be removed so I removed the restraints. The offender then sat back down. He was given several orders by myself and Lt. Jefferies to stand up and submit to a strip search. Offender Sosa then stated that "I[']m not taking off shit." Lt. Jefferies then attempted to place the offender in handrestraints [sic] and Sosa jerked away from him. Lt. Jefferies struck Offender Sosa then they began to struggle with each other. I assisted in placing the Offender on the floor by pushing the offender away from me. The offender continued to resist on the floor. After several orders and a short struggle the offender stopped resisting. As I was applying hand restraints I saw two bags of tabacco [sic] inside of the offender[']s pants. Lt. Jefferies removed the offender[']s boots and pants and the offender's shirt was removed. No additional contraband was found. I placed restraints on the offender and was relieved by Officer Mwanthi and Sgt. Patrick Mora. I then resumed my normal duties.

(Docket Entry No.31-2, page 15).

Lt. Benjamin Jefferies states the following in his written statement given the same day:

> On 1-7-07 at approx. 6:20pm [sic] I, Lieutenant Benjamin Jefferies, was in the Ad Seg Office when Sgt. Carl Davis escorted Offender Sosa . . . into the office in hand restraints. Sgt. Davis informed me that offender Sosa was refusing to submit to a strip search and he thought that he had some contraband. I told Sgt. Davis to remove the hand restraints so that the offender could submit to a search. As soon as the hand restraints were removed the offender sat down in a chair and said that Sgt. Davis was harassing him for no reason. I told the offender to stand up and submit to a strip search. The offender refused and stated that he was not removing any of his clothes. I told the offender to stand up again. He stood and I then ordered him to remove all his clothing or he would be escorted to the infirmary and forced to strip search in 18 cell. He refused again and I approached him to place him apply [sic] hand restraints. As I took hold of the offender[']s left arm with my left hand to guid [sic] him around he jerked away from me, turning his body sideways to me and began to reach into his pants for an unknown object. I then struck the offender in the right side of the face 1 time with a closed right hand. The offender fell away from me into the metal cabnit [sic] that the Seg UOF equipment [sic] is stored in. I placed both my hands on the offender[']s upper body and pulled him to the ground with the help of Sgt. Davis. The offender was face down[.] I moved to the feet of the offender as Sgt. Davis attempted to apply hand restrains. Sgt. Davis found two bags of tobacco [sic] coming out of the offender[']s pants. At that I removed the offender[']s boots and state pants. Offender Sosa removed his shirt and restraints were placed on the offender by Sgt. Davis. Sgt. Mora responded and sent additional officers to retreiv [sic] a video camera. I was releaved [sic] by Officer Mwanthi and Sgt. Mora and resumed my normal duties.

(Docket Entry No.31-2, page 13).

Sergeant Patrick C. Mora, Sr., who plaintiff contends is the officer who witnessed the altercation, reports in his written statement that at 6:25 p.m. on January 7, 2007, he observed the following:

> I Sergeant P.C. Mora responded to an incident inside the AD/SEG office. As I arrived I witnessed Offender Sosa . . . , who was in hand restraints, being held by Sergeant Davis. Officer Mwanthi and Officer Omaliko arrived and relieved Sergeant Davis. Officer Redd arrived, with the video camera and began to film the situation. I narrated the situation and instructed the officers to escort the said offender towards the Unit Medical Department, which they did with no resistance.

9

>Inside the infirmary, Offender Sosa received his Use of Force physical and was treated for several injuries. I took four still photos of the said offender's injuries. Once medical staff completed their evaluation, we escorted the offender to the main hallway inside the infirmary, and I took two still photos of the offender[']s full body. Before leaving the treatment room I instructed Offender Sosa on a participation form. We then escorted Offender Sosa to D line 1 row 3 cell, with no resistance. Once secured inside the cell I removed the hand restraints, with no resistance and terminated the Use of Force. This was approximately 1845 hrs. I then went to my normal job duties.

(Docket Entry No.31-2, page 18).

Based on this record, the Court finds the following facts to be uncontroverted. On January 7, 2007, defendant Davis suspected plaintiff was concealing contraband in his pants and ordered him several times to submit to a strip search. Plaintiff refused and complained that Davis was harassing him. Davis cuffed plaintiff and escorted him to the ad seg office. Plaintiff was in the ad seg office with defendants Jefferies and Davis for approximately five minutes. During this time, Jefferies and Davis demanded that plaintiff submit to a strip search and he refused. Jefferies told plaintiff that if he did not submit to the search, he would be taken to the infirmary and forcibly searched. Jefferies struck plaintiff on the face and plaintiff ended up on the floor. Plaintiff was lifted from the floor and his handcuffs were removed. Jefferies removed plaintiff's boots and pants; plaintiff's shirt was removed. Davis found two bags of tobacco in plaintiff's pants. After the search was completed, plaintiff was re-cuffed. Sgt. Mora saw plaintiff cuffed when he entered the ad seg office. Mora narrated the video tape and escorted plaintiff to the infirmary; he also photographed plaintiff's injuries.

The controverted record viewed in the light most favorable to plaintiff reflects that while plaintiff was cuffed defendants Jefferies and Davis hit and kicked plaintiff and forced him to submit to a strip search in the ad seg office.

Plaintiff's medical records do not support his claim that, as a result of the altercation, he suffered severe physical injuries, *i.e.*, his right eye was cut open and he suffered massive bruising to his back and ribs and his lips were cut. (Docket Entry No.17, page 2). The medical records in the Use of Force Report show that plaintiff suffered a laceration above his right eye, a bruised swollen eye, and multiple scratches on his face, right ear, shoulder, and the back of his head. (Docket Entry No.31-3, page 1). The injuries were classified as minor. (Docket Entry No.31-2, page 22). Steri strips were applied to the cut above plaintiff's right eye, his scratches were cleansed; he was given supplies for self-treatment, including an ice bag for his eye. (*Id.*). Photographs of plaintiff taken immediately after he received medical treatment show a swollen right eye. (Docket Entry No.31-3). A description below the photographs reflect that he sustained a laceration about the right eye, bruises with swelling on the right eye and multiple scratches on the face, right ear, shoulder, and back of his head. (*Id.*).

Other medical records show that two days after the altercation plaintiff reported to medical staff that he was suffering from blurry vision and that his eye itched and was matted in the morning. (Docket Entry No.31-4, page 5). Plaintiff was given eye drops and a visual acuity examination was scheduled. (*Id.*). On January 17, 2007, plaintiff's right eye was examined and found to have a subconjuctival hemorrhage but no treatment was required. (*Id.*, page 4). On January 31, 2007, plaintiff indicated to medical personnel that his vision was better and denied having any problems with the eye that had been injured. (*Id.*, page 3). The physician's assistant noted that his eye injury was resolved. (*Id.*). The records do not show that plaintiff suffered massive bruising on his left jaw, his back, ribs, legs, or head that one would most likely find if

one had been punched on his left jaw, kicked furiously on his legs, hit and kicked on his ribs and back, and pounded on the back of his head until he lost consciousness, as plaintiff has alleged.

> Plaintiff was found guilty of the following disciplinary infraction:
>
> On the date and time listed above, and at ad seg office, Offender Sosa, Alejandro, TDCJ-ID No.864611, was ordered by Lt. Jefferies to submit to a strip search and said offender failed to obey the order.  Offender Sosa did jerk away from Lt. Jefferies which resulted in a significant disruption of operations in that such act caused a major use of force.  Offender Sosa did possess a tobacco product, namely 2 packages of Bulger."

(Docket Entries No.20-3, page 3; No.31-4, page 10).  Plaintiff's line class status was reduced and he lost forty-five days of commissary and recreational privileges.  (Docket Entry No.17).

Plaintiff presents no evidence to contravene his medical record and no evidence to contravene the disciplinary record.  His injuries are consistent with being punched in the face, and taken to the floor.  *See Brown v. Lippard*, 472 F.3d 384, 387 (5th Cir. 2006) (quoting *Whitley v. Albers*, 475 U.S. 312, 321 (1986) (noting that "'[i]n evaluating excessive force claims, courts may look to the seriousness of the injury to determine "whether the use of force could plausibly have been thought necessary, or instead evinced such wantonness with respect to the unjustified infliction of harm as is tantamount to a knowing willingness that it occur'"); *compare Gomez v. Chandler*, 163 F.3d 921, 924-25 (5th Cir. 1999) (multiple injuries consistent with head struck on concrete floor, face scraped on floor, and repeated punches to face and kicks to face and head precluded summary judgment on claim of excessive force by prison guards).  While the undisputed record does not show that plaintiff posed a physical threat to the officers per se, the fact of his non-compliance with the orders posed a threat to the order and security of the prison as an institution.  Nevertheless, the record, viewed in plaintiff's favor, shows that defendants Davis and Jefferies used intentional physical force to induce a non-threatening inmate, whose

hands were restrained behind his back, to submit to a strip search and that plaintiff suffered minor injuries as a result of the altercation. Defendants' statements in the Use of Force Report further reflect that they were aware of an alternative means of inducing compliance with the order without resorting to punches and kicks. In light of such record, the Court finds that plaintiff has set forth a cognizable claim that defendants used unnecessary and excessive force in violation of the Eighth Amendment.

Defendants, nevertheless, contend that plaintiff fails to show that their alleged actions were objectively unreasonable in light of the law as it existed at the time the conduct occurred and in light of the information they possessed. (Docket Entry No.31). Defendants contend that given plaintiff's demeanor and his refusal to follow orders, a reasonable officer would feel action was necessary to regain control of the offender. (*Id.*, page 12).

At the time of the incident in this case, the law was clearly established that inmates have a constitutional right to be free from the use of excessive force. *See e.g., Hudson v. McMillian*, 503 U.S. 1, 5-10 (1992). It follows that if Davis and Jefferies used physical force to induce plaintiff's cooperation in a strip search that violates the Eight Amendment as plaintiff alleges, the Court cannot find that plaintiff has not shown that defendants' alleged conduct was objectively reasonable in light of clearly established law. *See e.g., Anthony v. Martinez*, 185 Fed. Appx. 360 (5th Cir. 2006) (not selected for publication).

Accordingly, plaintiff has overcome defendant's defense of qualified immunity. Defendants' motion for summary judgment on this ground is DENIED.

## IV. CONCLUSION

Based on the forgoing, the Court ORDERS the following:

1.  Defendants' motion for summary judgment (Docket Entry No.31) is GRANTED, in part, AND DENIED, in part. Defendants' motion for summary judgment on plaintiff's claims against them in their official capacities is GRANTED. Defendants' motion for summary judgment on their affirmative defense of qualified immunity is DENIED.

2.  All other pending motions, if any, are DENIED.

    It is so ORDERED.

SIGNED at Houston, Texas, this 2nd day of March, 2010.

                                                  MELINDA HARMON
                                               UNITEDSTATES DISTRICT JUDGE